C. SCOTT LILLY, *etc.*

*v.*

C. BOYD MUNSEY, *et al.*

(No. 10290)

Submitted January 10, 1951. Decided February 6, 1951.

248

*John R. Pendleton,* for appellants.

*James Harold Martin,* for appellee.

Fox, President:

On June 25, 1947, C. Boyd Munsey and Mahala B. Halsey were the owners of two contiguous tracts of land situated in Rock District in Mercer County, and on said date entered into a written lease in which their respective spouses, Minnie F. Munsey and Coy Halsey, joined, by which they demised and let unto J. Frank Tilley a certain boundary of land described in said lease, and embracing a part of said two tracts owned by them respectively. In said lease, it is stated that the party of the second part contemplated the construction of a race track on the described land owned by Mahala B. Halsey, and it was provided that the said lessee was authorized to erect all buildings necessary to the operation of the said race track, or for any other lawful purpose, on the land owned by C. B. Munsey, and included in said leased premises. It was also agreed that the parties of the first part, as a part of the consideration for said lease, would have the right and privilege of entering upon the leased premises for the purpose of operating such concessions as they might desire to operate thereon, including soft drink stands, restaurants, fountains, ice cream stands, shooting galleries, swings, ferris wheels, merry-go-rounds, and any and all other concessions, amusements and attractions not therein specifically granted to the lessee. It was also provided that the lessee should have the right to use the leased property as a race track for each and every type of racing, athletic events of every type, and for any other lawful exhibition which he might desire to engage in, and for other performances or appearances upon said leased

premises, and that the rights of the parties of the first part to operate concessions, as above enumerated, should be construed as ordinary rights granted to concessionaires, and not to include the right to use said premises for feature events; and that any such stands or concessions should not interfere with the use and occupancy of the leased premises by the lessee. As further consideration for the lease, it was agreed that the party of the second part should pay to the lessors ten per cent of the gross income, after deducting admission taxes, received by the lessee in connection with the use and operation of the leased premises. The lease was for the term of one year with the right in the lessee to renew the same from year to year, on the same terms and conditions, by giving to the lessors, or either of them, written notice of his intention to renew the said lease, which notice was required to be given on or before the first day of April of each year. There is a further provision that the lessee should pay, upon any termination of the lease, to Mahala B. Halsey and Coy Halsey, the costs, in excess of $50.00, of leveling and replacing the surface of the Halsey land to the condition it was in at the date of the lease.

On July 22, 1947, the plaintiff, C. Scott Lilly, doing business as the Lilly Construction Company, entered into a verbal contract with J. Frank Tilley, the lessee aforesaid, for the construction of a half mile race track upon the leased premises. Under said contract the plaintiff furnished a bulldozer and a person to operate the same, and performed work for which a charge of $460.87 was made; and on August 19, 1947, the plaintiff filed a mechanic's lien for such sum of money and served notice thereof on the owners of the leased premises on August 22, 1947, asserting such lien against the fee simple estate of such owners of the land included in the lease aforesaid. No question is raised as to the form of notice, nor the date when it was filed and notice thereof served, the sole question involved in this case being whether such lien attached to the fee simple estate in said tracts of land owned by the respective owners thereof.

This suit against said lessors, J. Frank Tilley and others, to enforce the said mechanic's lien was instituted on October 23, 1947, and process therein served on the above named lessors. An order of publication was entered and published as to J. Frank Tilley and others. The bill in the cause was filed at December Rules, 1947, and the joint answer of the defendant lessors, Munsey and Halsey, thereto, was filed at January Rules, 1948, and a joint demurrer to said bill was interposed by the said lessors in open court on March 8, 1948. An amended bill was filed in the cause on April 10, 1948, to which a joint demurrer of the defendant lessors was filed, and on May 28, 1948, their joint answer to said amended bill was filed, to which there was a general replication. The case was submitted on the pleadings, and proof taken in open court, September 12, 1949, although the order of submission was not entered until January 4, 1950. On March 29, 1950, the court entered a decree sustaining the said mechanic's lien as against the fee simple estate of the lessors in the two tracts of land aforesaid included in said lease; a personal decree for $460.87 was entered against C. Boyd Munsey, Minnie F. Munsey, Mahala B. Halsey and Coy Halsey; and the decree provided for the sale of the fee simple interest of the lessors in the leased premises by a special commissioner appointed for that purpose. From said decree, we awarded this appeal on May 29, 1950.

The defendant, J. Frank Tilley, did not appear in the suit, nor did he testify. The plaintiff did testify on the hearing, aforesaid, and stated that prior to the institution of his suit, he had not sent a statement to the Munseys or Halseys for the work performed by him on the leased premises, and had not requested them to pay his bill for said work. He was then asked this question on cross-examination: "And the contract that you had to do the work that you did do was with J. Frank Tilley?", to which he answered: "J. Frank Tilley, that's right." He was then asked: "You never had any contract with Munsey and Halsey and their wives?", to which he replied: "No, sir, I didn't know them." He was then asked: "You didn't

know them, did you?", to which he replied: "No, sir." He was then asked: "And they didn't know you?", to which he replied: "That's right." It is therefore apparent that there was no direct or express contract between the plaintiff and the defendant lessors in respect to the work for which the lien on their land is now sought to be enforced. .

This would seem to present the vital question on this appeal. The creation of a mechanic's lien is controlled by statute, and Code, 38-2-1, provides:

> "Every person, firm or corporation, which shall erect, build, construct, alter, remove or repair any building or other structure, or other improvement appurtenant to any such building or other structure, under and by virtue of a contract with the owner for such erection, building, construction, alteration, removal or repair, either for an agreed lump sum or upon any other basis of settlement and payment, shall have a lien upon such building or other structure or improvement appurtenant thereto, and upon the interest of the owner thereof in the lot of land whereon the same stands, or to which it may have been removed, to secure the payment of such contract price or other compensation therefor."

It must follow, therefore, that there being no direct or express contract between the plaintiff and the lessors aforesaid, the decree entered by the Circuit Court of Mercer County cannot stand, unless some other basis therefor is found. The plaintiff contends there was a sound basis for said decree, and we will proceed to examine his contentions, which, as we understand, are as follows:

His first contention is that the lease agreement, properly construed, created J. Frank Tilley an agent of the lessors to contract with the plaintiff for the work he performed, and for which he asserts his mechanic's lien. A reading of the lease agreement does not sustain this contention. There is nothing in said lease agreement which purports to make Tilley the agent of the lessors, or from which such agency can be implied. The property was

leased for certain purposes stated in the lease, but the lessee was not required to grade land or construct buildings. He was only authorized to do so. The lessors were permitted to erect structures necessary to 'be used in connection with what is called concessions, but were to be so constructed as not to interfere with the operation of the leased premises by the lessee. Provision was made in the lease that the lessors should receive ten per cent of the gross receipts of the race track operation or other entertainment, after excluding admission taxes. These were nothing more than a reservation of certain rights, and a provision for certain rentals depending upon the volume of business transacted, and no where in the lease can we find any language even tending to establish the relation of principle and agent as between the lessors and lessee.

We are cited to the case of *Milligan* v. *Alexander,* 72 W. Va. 615, 79 S. E. 665. This was a case where the husband had contracted in his own name, with the knowledge of his wife, for the erection of a building on her land. The work was carried out with her knowledge and consent, and it was held that her property became liable to a mechanic's lien for such improvement, but the court held in the body of the opinion that:

> "A mechanics' lien is a creature of statute, and in order to obtain such lien the requirements of the statute must be complied with. A builder can not have a lien simply 'by erecting a building on the land of another, independent of contract. The work must be done 'by virtue of a contract with the owner or his authorized agent.' * * *"

The basis of the decision appears to be that the wife impliedly constituted her husband as her agent, or at least acquiesced in his contract before and while the work was being performed, and that she could not thereafter repudiate the results flowing from her acts. In the absence of some special provision creating a lessee as an agent for the lessor, the mere relation of lessor and lessee does not make the lessee the agent of the lessor to contract for work

on leased premises, although the interest of the lessee in the land, created by the lease, may be made the subject of a mechanic's lien. *Showalter* v. *Lowndes*, 56 W. Va. 462, 49 S. E. 448. In this connection see *Atlas Portland Cement Co.* v. *Main Line Realty Corp. et al.*, 112 Va. 7, 70 S. E. 536; *Carter* v. *Keeton & Coleman et al.*, 112 Va. 307, 71 S. E. 554; Annotation, 79 A. L. R. 962-974; Annotation, 163 A. L. R. 992-1003; 36 Am. Jur. 73; 40 C. J. 63.

The next contention is that the lessors and the lessee were engaged in a joint adventure, and on that contention the only resort is to the lease agreement, and the conduct of the parties thereunder. We find nothing therein from which it can be implied that any joint adventure was intended to be entered into on the part of the parties to the lease. In the first place, whether any work was to be done by the lessee on the leased premises was optional with him. There is nothing in the lease that required such action on his part. The only provision of the lease which gave the lessors any interest in the operation of the race track was the provision that they should be entitled to ten per cent of the gross revenues, less taxes on admissions, and we think this must be construed as fixing the rental to be paid the lessors for the use of their property, and nothing more. Of course they may have contemplated some profits from the concessions they were permitted to operate on the leased premises.

In *Gelwicks* v. *Homan*, 124 W. Va. 572, 20 S. E. 2d 663, this Court held:

> "A joint adventure is created where two or more persons undertake a special and particular enterprise, involving some activity beyond that of joint ownership, and where there is no intent to enter into an actual partnership."

In the case at bar, the record does not disclose any intent on the part of the lessors and the lessee to engage in any joint enterprise. The enterprise which the lessee contemplated entering was the grading of the land for use as a race track, construction of fences, buildings, etc.,

to be used in connection therewith. It was not contemplated that the lessors would have anything whatever to do with such construction, and they had no connection with the operation of the race track. They reserved the right to operate concessions and erect structures necessary for that purpose, but the activities of the lessors and lessee were separate and distinct, and there was no connection whatever between the two. The provision for rentals based upon gross receipts from the operation of the race track was a separate and distinct agreement. The lessor had no right or authority over the operation of the race track as such, nor was the lessee interested in the concessions which the lessors might operate.

The case of *Pownall* v. *Cearfoss*, 129 W. Va. 487, 40 S. E. 2d 886, contains a broad discussion of a joint adventure, and that case also contains excerpts from *Gelwicks* v. *Homan, supra,* and the case of *Horchler* v. *Van Zandt,* 120 W. Va. 452, 199 S. E. 65, in which latter case the following statement appears in the body of the opinion:

> "A joint enterprise or adventure frequently exists in business undertakings. It is less amalgamating than a partnership but partakes of the nature thereof. *Ohio Valley Builders' Supply Co.* v. *Construction Co.,* 108 W. Va. 354, 151 S. E. 1. Such adventure is sometimes called a limited partnership; not limited as to liability, but as to its scope and duration. *Ross* v. *Willett,* 76 Hun 211, 27 N. Y. S. 785. Distinguished from the routine of partnerships and other business associations, single or isolated undertakings usually constitute the background of joint adventures. * * *"

It seems to be conceded that to constitute a joint adventure there must be an agreement to combine property or efforts and to share in profits. A provision for sharing in the profits of an enterprise is quite different from one providing for a share of gross receipts as rentals. Whether responsibility for losses is required to create a joint adventure is less certain and the question need not be decided here.

Counsel for the plaintiff cited the case of *Smith* v. *Mc-*

*Coy et al.,* 58 S. D. 256, 235 N. W. 661. In this case it was held:

> "Lease obligating lessee to construct race track did not make him lessor's agent for purpose, nor create privity of contract between lessor and contractor."

This holding was made under a statute which gave a lien for contribution to cost of improvement of realty under contract with owner or agent of owner. But the same case held that:

> "Realty leased to one contracting for construction of race track *held* subject to mechanic's lien, in absence of pleading and proof that owner did not authorize improvement and gave statutory notice."

This holding was made under a provision of the statute of South Dakota providing, in general, that when improvements are made by one person on the land of another, all persons interested therein, otherwise than bonafide prior incumbrancers or lienors, shall be deemed to have authorized improvements so far as to subject their interest to liens therefor, but that any person who has not authorized improvements may protect his interest from such liens by serving on persons doing work within five days after knowledge thereof notice that the improvement is not being made at his instance, or by posting notice on the premises. We have no such statute. Our statute, quoted above, makes a contract, express or implied, a prerequisite to any mechanic's lien which binds leased premises, and we do not think *Smith* v. *McCoy, supra,* is here applicable.

Being of the opinion that there was no direct or express contract between the plaintiff and the lessors providing a basis for a mechanic's lien, binding the fee simple estate of the lessors in the leased premises here involved; that the lease in question did not create the lessee the agent of the lessors to contract for the construction of the race track and the contemplated structures to be used in connection therewith; and that the relations created by the said lease between the lessors and the lessee did not, as

between them, constitute a joint adventure; we find no sound basis for the decree of the Circuit Court of Mercer County in entering a personal judgment against, not only the owners of the land, but the husband and wife of the respective owners, and which decreed the same to be a lien on the fee simple interest of the owners of the land covered by the lease, and for the sale thereof by special commissioner appointed by the court.

We have not considered the question of whether the work performed by the plaintiff on the leased premises was of such a nature as could be made the subject of a mechanic's lien of any kind. It was contemplated that, in addition to grading the land for race track purposes, other buildings and structures were intended to be erected. If this had been done, it might well be contended that the grading was necessary to the whole project, and might come within the ruling of this Court in *Lumber Co. v. Wetzel & Tyler Railway Co.*, 69 W. Va. 682, 72 S. E. 786. Nor do we pass upon the question of whether, in the circumstances of this case, a joint suit to enforce the lien is permissible. In this connection, attention is called to the fact that the grading on which plaintiff's claim is based was done on the land of only one of the defendants, but it was done in connection with the contemplated construction of buildings and other structures on the land of the other lessor, and perhaps on the land of both. Of course, under *Showalter* v. *Lowndes, supra,* a mechanic's lien binds the lease holding estate including any structures which may have been erected thereunder; but the record discloses that the lease has been abandoned by Tilley, no work was done thereon except the grading, and it being so clear that the lease has no value at this time, it is unnecessary to decide whether or not two suits were necessary.

We, therefore, reverse the decree of the Circuit Court of Mercer County, and an order will be entered here dismissing the plaintiff's suit.

*Decree reversed;*
*plaintiff's suit dismissed.*