IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

_____

No. 17-0300

_____

FILED
November 1, 2017
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LARRY D. PYLES, JR. AND PAMELA PYLES,
Petitioners

v.

MASON COUNTY FAIR, INC. AND THE
COUNTY COMMISSION OF MASON COUNTY,
Respondents

_____

Certified Questions from the Circuit Court of Mason County

QUESTIONS ANSWERED

_____

Submitted:  September 20, 2017
Filed:  November 1, 2017

Harvey D. Peyton, Esq.
Thomas H. Peyton, Esq.
Peyton Law Firm, PLLC
  Office of Legal Services
Nitro, West Virginia
Counsel for Petitioners

Wendy E. Greve, Esq.
Drannon L. Adkins, Esq.
Pullin, Fowler, Flanagan,
  Brown & Poe, PLLC
Charleston, West Virginia
Counsel for Mason County Commission

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS

1. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

2. "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va. Code*, 51-1A-1, *et seq.* and *W.Va. Code*, 58-5-2 [1967], the statute relating to certified questions from a circuit court of this State to this Court." Syl. Pt. 3, *Kincaid v. Mangum.* 189 W.Va. 404, 432 S.E.2d 74 (1993).

3. The agreement of a county commission to permit a private, non-profit entity to hold a county fair on land owned by the county commission which fails to provide for the sharing of both profits and losses and coequal control over the fair operations does not constitute a joint venture.

LOUGHRY, Chief Justice:

Through three certified questions, the Circuit Court of Mason County seeks clarification from this Court regarding the applicability of the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act")[1] to claims made by an individual injured while attending the Mason County Fair ("fair"). At the center of each of the inquiries propounded by the circuit court is the petitioners' (hereinafter "plaintiffs") attempt to assert vicarious liability against the Mason County Commission ("Commission") based on a purported joint venture between the Commission and the Mason County Fair, Inc. ("Fair Board").[2] After reformulating the questions submitted to us to conform to the facts of this case, we determine that either the immunity provisions of the Act or the public duty doctrine operates to prevent the plaintiffs from seeking liability against the Commission under the facts of this case.

## I. Factual and Procedural Background

On August 9, 2013, the plaintiffs, Larry D. and Pamela Pyles, were paid admission attendees at the fair. At approximately 9:45 p.m., Mr. Pyles was savagely beaten by three teenagers while standing in the midway area of the fair. As a result of the attack,

---

[1]*See* W.Va. Code §§ 29-12A-1 to -18 (2013).

[2]The Fair Board is a domestic, non-profit corporation.

1

Mr. Pyles suffered a traumatic brain injury. Lasting effects from that brain injury are alleged to include post-concussion syndrome and other non-specified permanent disabilities.

On December 5, 2014, the plaintiffs filed a complaint against the Fair Board seeking damages for negligence and loss of consortium. In answering the complaint, the Fair Board filed a third-party complaint against the three individuals who attacked Mr. Pyles[3] seeking contribution and indemnity for any liability assessed against it in connection with Mr. Pyles' injuries. Following initial discovery, the plaintiffs amended their original complaint to add the Commission as a defendant.[4] The plaintiffs averred that the Commission was negligent for its alleged failure to prevent Mr. Pyles from being injured at the fair.

On January 4, 2017, the plaintiffs sought leave to file a second amended complaint to insert an allegation that the Fair Board and the Commission were engaged in a joint venture with regard to the staging and operation of the annual fair. Based on this alleged joint venture, the plaintiffs asserted that the Commission "owed a duty to the Plaintiffs that exceeded any general duty owed by any law enforcement agency to the public at large." The Commission opposed the plaintiffs' attempt to reamend the complaint,

_____

[3]Each of those individuals is a citizen of Pomeroy, Ohio.

[4]The circuit court granted the plaintiff's motion to file an amended complaint on June 15, 2015.

2

arguing that such amendment would be futile because the additional theory of recovery "does not obviate the public duty doctrine."[5]  Given that the plaintiffs second amended complaint lacked any allegations that a special relationship existed between the plaintiffs and the Commission, the Commission reasoned that the amendment was pointless as the plaintiffs' joint venture theory could not defeat the public duty doctrine or abrogate the Act's provisions of immunity.

The circuit court heard arguments of counsel on the plaintiffs' motion to reamend the complaint on February 22, 2017.  Finding it unnecessary to resolve any factual issues regarding the alleged joint venture to decide the motion to amend, the circuit court denied the motion on the grounds that such amendment would be futile.[6]  The circuit court reasoned that, even assuming the existence of a joint venture for the purpose of ruling on the motion, the Act affords immunity to the Commission for the injuries sustained by Mr. Pyles while at the fair.  In addition, the circuit court ruled that the Commission only owed Mr.

---

[5]*See infra* note 9.

[6]*See Bowyer v. HI-LAD, Inc.*, 216 W.Va. 634, 653-54, 609 S.E.2d 895, 914-15 (2004) (upholding circuit court's decision to grant summary judgment and denying request to amend pleadings on grounds of futility in view of indemnification clause); *see also Perkins v. U.S.,* 55 F.3d 910, 917 (4th Cir. 1995) (upholding district court's denial of widow's attempt to amend wrongful death action as proposed amendments could not survive motion to dismiss); *see generally* 6 Charles Alan Wright *et al.*, *Fed'l Practice and Procedure* § 1487 (3rd ed. 2010) (recognizing that numerous courts have denied proposed amendments where such amendments were viewed as frivolous or advancing claim or defense that is legally insufficient on its face).

Pyles the general duty of care that any political subdivision owes to the public at large.

As part of its ruling, the circuit court, with the agreement of counsel, certified the following three questions to this Court:

> 1. If a political subdivision enters into a joint venture with a private entity to conduct an annual county fair on real property owned by the political subdivision, does the West Virginia Governmental Tort Claims and Insurance Reform Act provide the political subdivision with immunity from vicarious liability for injuries suffered by a non-trespassing entrant on the real property caused by the negligent acts of the private entity?
>
> 2. If a political subdivision enters into a joint venture with a private entity to conduct an annual county fair on real property owned by the political subdivision, does the political subdivision assume the same legal duty to non-trespassing entrants on the real property as that of the private entity?
>
> 3. Does the existence of a joint venture between a political subdivision and a private entity to conduct an annual county fair on real property owned by the political subdivision, void/abrogate any of the immunities provided by the West Virginia Governmental Tort Claims and Insurance Reform Act?

The circuit court answered the first question in the affirmative and the second and third questions in the negative.

## II. Standard of Review

As this Court stated in syllabus point one of *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996): "The appellate standard of review of

4

questions of law answered and certified by a circuit court is *de novo*." We proceed to consider and address the questions presented by the circuit court.

### III.  Discussion

Upon our review of the certified questions, we conclude that those queries must be reframed in order that the issues presented in this case may be fully and properly addressed.  As we recognized in syllabus point three of *Kincaid v. Mangum*. 189 W.Va. 404, 432 S.E.2d 74 (1993),

> When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va. Code*, 51-1A-1, *et seq.* and *W.Va. Code*, 58-5-2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

Accordingly, we will address the following inquiries:

> 1.  When a county commission enters into a usage agreement with a private, non-profit entity pursuant to which the private entity conducts an annual county fair on land owned by the commission and the county commission has no control with regard to the operations of the fair and does not receive any monetary compensation from the operation of the fair, does the agreement between the county commission and the private entity constitute a joint venture?

> 2.  Do individuals engaged by a private entity to work at a county fair on land owned by a county commission qualify as "employees" of the county commission for purposes of the West Virginia Governmental Tort Claims and Insurance Reform Act?

5

3. Where a county fair is operated by a private entity on property owned by a county commission, does the commission owe a special duty of care to individuals who attend the fair or merely the same duty of care that is owed to the public in general?

Each of the reframed questions will be addressed in turn.

## A. Joint Venture

At the core of the plaintiffs' motion to reamend their complaint at this juncture is their attempt to inject a new theory upon which to attach liability to the Commission for the injuries Mr. Pyles sustained at the fair.[7] Pursuant to that theory, the plaintiffs aver that

> the County Commission, as part of its joint venture with the County Fair to stage an annual outdoor festival, voluntarily undertook to provide for the reasonable safety of non-trespassing entrants on the premises of the Mason County Fairgrounds by exercising reasonable care under the circumstances then and there existing to guard against and prevent severe injury to the Plaintiffs . . . ; [B]ecause of this joint venture between the County Commission and the County Fair, both of the parties to their joint venture owed a duty to the Plaintiffs that exceeded any general duty owed by any law enforcement agency to the public at large.

As the basis for its joint venture claim, the plaintiffs rely on the fact that the Commission and the Fair Board entered into an agreement on April 13, 2006, whereby the

---

[7]In answering the first amended complaint, the Commission raised the affirmative defense of immunity and specifically averred that the Act barred any claims of the plaintiffs predicated on simple negligence or vicarious liability.

Commission granted to the Fair Board "the right to control, maintain, improve and utilize the Mason County Fairgrounds for its purposes as set forth in its Charter and By-laws."[8] Pursuant to that agreement the Fair Board agreed to expend its own funds "to maintain and improve" the fairgrounds. While the agreement acknowledges the Commission's authority "to charge and collect fees for the use of its property herein granted," it further provides that the Commission "agrees to charge no fee to Fair [Board] in return for the practice of Fair [Board] in expending its own funds in the improvement and maintenance of the Fairgrounds."

Seeking to circumvent the "public duty doctrine"[9] with the aim of imposing liability against the Commission, the plaintiffs argue that the Commission was involved in a joint venture with the Fair Board. Both the law and the facts of this case prove otherwise.

---

[8]The Commission had purchased the fairgrounds from the federal government in the mid-1960s. Prior to that purchase, the Fair Board had utilized the grounds under a special permit from the federal government.

[9]Pursuant to the public duty doctrine, the "duty imposed upon a governmental entity is one owed to the general public, and unless the injured party can demonstrate that some special relationship existed between the injured person and the allegedly negligent entity, the claim is barred." *Jeffrey v. W.Va. Dep't of Pub. Safety*, 198 W.Va. 609, 614, 482 S.E.2d 226, 231 (1996); *see Randall v. Fairmont City Police Dep't*, 186 W.Va. 336, 346, 412 S.E.2d 737, 747 (1991) ("The public duty doctrine is that a local governmental entity's liability for non-discretionary . . . functions may not be predicated upon the breach of a general duty owed to the public as a whole; instead only the breach of a duty owed to the particular person injured is actionable."); *see also Holsten v. Massey*, 200 W.Va. 775, 782, 490 S.E.2d 864, 871 (1997) (explaining that public duty doctrine "is not based upon immunity from existing liability [but] . . . on the absence of duty in the first instance").

7

A joint venture is defined as "*an association of two or more persons to carry out a single business enterprise for profit*, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties." Syl. Pt. 2, in part, *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987) (emphasis supplied). Borrowing from language that suits the plaintiffs' purposes, they cite our decision in *Armor v. Lantz*, 207 W.Va. 672, 535 S.E.2d 737 (2000), for the proposition that "members of a joint venture are . . . jointly and severally liable for all obligations pertaining to the venture." What the plaintiffs omit from that partial quote, however, is this Court's prefatory and foundational explanation that "joint ventures and partnerships are governed generally by the same basic legal principles." *Id.* at 678, 535 S.E.2d 743. Having initially set forth this legal tenet, we proceeded to articulate the critical antecedent omitted by the plaintiffs: "Thus, since all partners are jointly liable for all debts and obligations of a partnership, *see* W.Va. Code § 47B-3-6(a) (1996), members of a joint venture are likewise jointly and severally liable for all obligations pertaining to the venture." *Id.*

Further ignored by the plaintiffs is the fact that the requisite agreement "to carry out a single business enterprise for profit" is wholly absent from this case. *Price*, 177 W.Va. at 593, 355 S.E.2d at 382, syl. pt. 2, in part. The Fair Board is a non-profit organization and the Commission–a governmental entity–did not receive, nor did it anticipate receiving, any financial return in connection with the holding of the annual fair.

8

According to the plaintiffs, the benefit that inured to the Commission from the Fair Board's maintenance of the property constitutes the obligatory element of "profit." Rather than evidencing a business venture created for commercial purposes, this type of non-cash benefit tends instead to disprove the existence of such an arrangement.[10] When discussing the absence of a litmus test for demonstrating a joint venture in *Armor*, we observed the common-law requirement that "there must be an agreement to share in both the profits and the losses.'" 207 W.Va. at 678, 535 S.E.2d at 743 (quoting *Pownall v. Cearfoss*, 129 W.Va. 487, 497-98, 40 S.E.2d 886, 893-94 (1946)). That the focus on the "presence or absence of an agreement to share in the profits and losses of an enterprise" remains a critical component of the joint venture analysis today is clear from our discussion in *Armor*. In reviewing our decisions in this area, we observed that the absence of evidence demonstrating that two firms performing mining operations had "'agreed to share profits and losses'" was determinative with regard to the plaintiff's failed attempt to establish a joint venture. 207 W.Va. at 679, 535 S.E.2d at 744 (analyzing *Kerns v. Slider Augering & Welding, Inc.*, 202 W.Va. 548, 556, 505 S.E.2d 611, 619 (1997)).

In addition to evidence of a profit-sharing agreement, this Court recognized in *Armor* that courts "have also emphasized the necessity of joint venturers having equal

---

[10]*See Armor*, 207 W.Va. at 680, 535 S.E.2d at 745 ("'[T]he mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a partner or joint venturer.'") (citation omitted).

9

control over the common commercial pursuit." 207 W.Va. at 680, 535 S.E.2d at 745. The record in this case makes clear that the Commission did not have any control with regard to the operations of the fair.[11] The Fair Board, *not* the Commission, had complete control with regard to all matters pertinent to the operations of the fair. *See id.* (discussing fact that "'control required for imputing negligence under a joint enterprise theory is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose'") (citation omitted). As the land usage agreement makes clear, the Fair Board has the right "to utilize the Mason County Fairgrounds for its purposes as set forth in its Charter and By-laws." Importantly, there are no provisions in the agreement that grant the Commission coextensive control of the fair operations. Moreover, as discussed above, the pursuit at issue–an annual county fair–cannot qualify as a "commercial pursuit."

Upon analysis, there are no facts in the record of this case that support the plaintiffs' joint venture theory. First and foremost, there was no agreement between the Commission and the Fair Board to engage in a commercial enterprise for the purpose of generating profits. And, as discussed, the Commission lacked any control whatsoever with regard to the operations of the fair. Given the facts of this case, the plaintiffs' attempt to

---

[11]While the Mason County Sheriff's office assigned deputies to provide a law enforcement presence at the fair, the plaintiffs have made clear that their case against the Commission is not predicated on law enforcement efforts.

elude the public duty doctrine[12] or specific provisions of immunity afforded the Commission under the Act[13] through its assertion of a joint venture theory was ill-advised. Furthermore, this Court is not persuaded by the plaintiffs' contention that the joint venture allegations are necessarily unassailable.[14] Based on the record presented in this case, both the existence of a joint venture and the applicability of immunity under the Act are legal determinations capable of and demanding resolution at this juncture of the litigation rather than at the appellate stage.[15] Because the principles of governmental immunity clearly apply to the facts of this case, we would be violating our well-established rule of not requiring parties who are

---

[12]*See supra* note 9.

[13]*See* W.Va. Code §§ 29-12A-4(b)(1), -5.

[14]The plaintiffs argue that a decision to deny a motion to amend a complaint is subject to the same standard as a motion to dismiss under Rule 12(b)(6) and requires the allegations of the proposed amended pleading to be viewed as veracious. *See West Virginia Bd. of Educ. v. Marple*, 236 W.Va. 654, 660, 783 S.E.2d 75, 81 (2015) (recognizing that for purposes of motion to dismiss, complaint is construed in light most favorable to plaintiff and allegations are taken as true). However, where an amended pleading would be subject to a motion to dismiss on other grounds, such as immunity, it should be denied as futile. *See Perkins*, 55 F.3d at 917 ("Because the United States would still be immune and the suit properly dismissed even if the new claim were taken as true, the district court did not abuse its discretion in denying the motion to amend."); *accord Kirk v. Heppt*, 423 F.Supp.2d 147, 149 (S.D. N.Y. 2006) ("A proposed amendment to a pleading is deemed to be futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis.").

[15]*See Hutchison v. City of Huntington*, 198 W.Va. 139, 148, 479 S.E.2d 649, 658 (1996) (observing that "very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case" and that "[i]mmunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all").

clearly entitled to statutory immunity to remain in an action if we required the Commission to remain in this case based on unprovable pleadings. *See Hutchison v. City of Huntington*, 198 W.Va. 139, 149, n.13, 479 S.E.2d 649, 659, n.13 (1996) (explaining that "assertion of qualified or absolute immunity should be heard and resolved prior to any trial"); *see also Robinson v. Pack*, 223 W.Va. 828, 831, 679 S.E.2d 660, 663 (2009) (affirming "need for early resolution of immunity rulings" and holding that summary judgment ruling predicated on qualified immunity is subject to immediate appeal under "collateral order" doctrine). As recognized in *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985), "[t]he liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures."

Accordingly, we hold that the agreement of a county commission to permit a private, non-profit entity to hold a county fair on land owned by the county commission which fails to provide for the sharing of both profits and losses and coequal control over the fair operations does not constitute a joint venture. We further find that the circuit court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint given that the existence of immunity under the Act or the public duty doctrine compelled the dismissal of the Commission from this case. *See Perkins,* 55 F.3d at 917. Accordingly, we answer the first reframed certified question in the negative.

## B. Commission Employees

Seeking to avoid the bar of immunity presented by the Act, the plaintiffs maintain that the individuals selected by the Fair Board to work at the fair's entrance gate were necessarily employees of the County Commission.[16] While the plaintiffs' objective in seeking to cast the gate workers as employees of the County Commission is clear, the collection of admission fares while standing on county-owned property did not make them employees of the County Commission. Critical to any attempt to impose liability premised on the actions of the fair workers, is proof by the plaintiffs that those individuals fall within the employment-related definition provided by the Act. An "employee" is defined as "an officer, agent, employee, or servant, whether compensated or not, . . . who is authorized to act and is acting within the scope of his or her employment for a political subdivision." W.Va. Code § 29-12A-3(a).

Implicitly acknowledging their inability to meet the Act's description of an employee, the plaintiffs proceed down a separate path. They simply announce that anyone selected by the Fair Board to work at the fair is necessarily an agent (i.e. employee) of the other joint venturer (i.e. County Commission) based on their assumption that the County Commission and the Fair Board are joint venturers. This premise is wholly untenable given

---

[16]Under the Act, "[p]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees. . . ." W.Va. Code § 29-12A-4(c)(4).

that the plaintiffs cannot prove that the County Commission and the Fair Board were engaged in a joint venture.[17]

Just as there was no basis in the record to establish the existence of a joint venture, there is absolutely no basis for the plaintiffs' claim that the workers chosen by the Fair Board to work at the fair qualified as employees of the County Commission within the meaning of the Act. *See* W.Va. Code § 29-12A-3(a). The County Commission did not select, hire, or have any control whatsoever with regard to the individuals the Fair Board utilized to work at the fair. Absent any evidence that the fair workers came within the Act's definition of an "employee," the plaintiffs cannot proceed on its theory that the County Commission is liable for Mr. Pyles' injuries due to the negligence of the fair workers. *See* W.Va. Code §§ 29-12A-3(a), -4(c)(4). Accordingly, we answer the second reframed certified question in the negative.

## C. Duty of Care

In their attempt to attach liability to the County Commission for the injuries sustained by Mr. Pyles, the plaintiffs sought to create an elevated duty of care on the part of the County Commission with regard to the fair patrons. Unable to demonstrate that the County Commission had a special relationship with Mr. Pyles that required it to supply him

---

[17]*See supra* Section III.B.

with a greater duty than that owed to the general public,[18] the plaintiffs sought to sidestep the effects of the public duty doctrine by imposing vicarious liability against the County Commission under its theory of joint venture.[19]  As discussed above, the plaintiffs cannot succeed against the County Commission under a theory of joint venture.

As the record of this case makes clear, the only duty owed by the County Commission to the plaintiffs is the general duty that it owed to the public. The plaintiffs' own expert, Dr. R. Paul McCauley, testified that the Mason County Sheriff's Department, and by extension the County Commission, only owed a general duty to the plaintiffs.  As this Court explained in *West Virginia State Police v. Hughes*, 238 W.Va. 406, 796 S.E.2d 193 (2017):

> Under the public duty doctrine, a government entity or officer cannot be held liable for breaching a general, non-discretionary duty owed to the public as a whole.  "Often referred to as the 'duty to all, duty to no one' doctrine, the public duty doctrine provides that since government owes a duty to the public in general, it does not owe a duty to any individual citizen."

*Id.* at 412, 796 S.E.2d at 199 (citation omitted).  Because the plaintiffs have failed to identify

---

[18]*See supra* note 9.

[19]While unnecessary to our decision, we agree with the County Commission that the Act does not permit a political subdivision to be held vicariously liable for the negligence of a non-employee.  *See Zirkle v. Elkins Road Pub. Serv. Dist.*, 221 W.Va. 409, 414, 655 S.E.2d 155, 160 (2007) (recognizing that political subdivisions are not liable for any acts with respect to both governmental and proprietary functions unless the acts complained of come within the specific liability provisions of W.Va. Code § 29-12A-4(c)).

15

any basis for holding the County Commission to any duty other than the general duty that is owed to the public at large, we are compelled to answer the third reframed certified question in the negative.

## IV.  Conclusion

Based on the foregoing, we answer each of the reframed certified questions in the negative.

Questions answered.