# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Terri Ann Wiles and Terry Wiles,
Plaintiffs Below, Petitioners

**FILED**

**July 31, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs)  No. 19-0192  (Monongalia County 17-C-31)

West Virginia University Hospitals, Inc.,
Defendant Below, Respondent

## MEMORANDUM DECISION

Petitioners Terri Ann Wiles and Terry Wiles, by counsel Jacques R. Williams and Alex Shook, appeal the January 30, 2019, order of the Circuit Court of Monongalia County that denied their partial motions for summary judgment and granted the motion for summary judgment filed by Respondent West Virginia University Hospitals, Inc. ("WVUH"), finding that petitioners failed to prove that WVUH and University Health Associates ("UHA") were engaged in a joint venture and that, as a result, WVUH was not vicariously liable for the alleged medical negligence of a UHA physician. Respondent WVUH, by counsel Christine S. Vaglienti, filed a response in support of the circuit court's order. Petitioners submitted a reply.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 20, 2015, Mrs. Wiles became permanently paralyzed during the course of spinal surgery performed by John France, M.D. and others at Ruby Memorial Hospital in Morgantown, West Virginia. Ruby Memorial Hospital is owned, managed, and/or operated by Respondent WVUH. At the time, Dr. France was a member of West Virginia University Medical Corporation

---

[1] We acknowledge the contribution of the amici curiae briefs filed with this Court by the Defense Trial Counsel of West Virginia, by counsel Mychal S. Schulz, West Virginia University Medical Corporation, by counsel David E. Schumacher and Michael W. Taylor, and West Virginia University Board of Governors, by counsel Timothy R. Linkous and Margaret L. Miner. We have considered the briefs of all of the amici curiae in conjunction with the parties' arguments.

d/b/a University Health Associates ("UHA"),[2] a physician practice group comprised of the faculty of the WVU School of Medicine. As a member of the School of Medicine faculty, Dr. France was also an employee of the West Virginia University Board of Governors ("WVUBOG").[3]

On January 19, 2017, petitioners, husband and wife, filed a medical malpractice action against Dr. France, UHA, WVUBOG, and Respondent WVUH. Petitioners alleged that Dr. France deviated from the accepted standard of medical care and treatment of Mrs. Wiles; that, in doing so, Dr. France acted as an agent and employee of WVUBOG and, as such, WVUBOG was liable pursuant to the principles of agency and respondeat superior; and that, because Dr. France was a member of UHA, which contracted with Mrs. Wiles for the surgical services performed by Dr. France, UHA was liable for breach of contract as well as under principles of agency and respondeat superior.

With regard to Respondent WVUH, petitioners alleged that, by virtue of a joint operating agreement ("the agreement") entered into on July 30, 2010, between Respondent WVUH, WVUBOG (on behalf of the WVU School of Medicine), and UHA, these parties were engaged in a joint venture known as WVU Healthcare[4]; that, pursuant to the agreement, these entities delivered the healthcare services performed on Mrs. Wiles by Dr. France; and that, based upon this joint venture, Respondent WVUH, along with WVUBOG and UHA, was vicariously liable for petitioners' injuries.

By agreed order entered on June 7, 2018, petitioners voluntarily dismissed their claims against Dr. France. WVUBOG and UHA entered into a settlement agreement with petitioners and were dismissed by order entered on July 23, 2018, leaving Respondent WVUH as the only remaining defendant. Petitioners and Respondent WVUH subsequently entered into a stipulation whereby they agreed to suspend discovery on the medical negligence issues in order to first resolve petitioners' claim that WVUH and UHA were engaged in a joint venture.[5]

Following discovery on the joint venture issue, the parties filed cross-motions for summary

---

[2] Many of the briefs, pleadings and various documents in the appendix record refer to West Virginia University Medical Corporation, or "WVUMC," as simply "UHA." Therefore, we will also use "UHA" to avoid confusion.

[3] It is undisputed that Dr. France was not an employee of Respondent WVUH.

[4] West Virginia United Health System, Inc., the parent corporation of Respondent WVUH, was also a party to the agreement but was not a named defendant in this civil action.

[5] While petitioners' complaint also alleged that the agreement created a joint venture with WVUBOG, a named defendant below, petitioners proceeded under a joint venture theory only as between Respondent WVUH and UHA.

2

judgment and a hearing thereon was conducted on January 8, 2019.[6] By order entered on January 30, 2019, the circuit court granted Respondent WVUH's motion, finding that petitioners failed to present sufficient evidence to show that WVUH and UHA were engaged in a joint venture so as to make WVUH vicariously liable for the alleged negligence of Dr. France, a UHA physician. The court's order also denied petitioners' motions for partial summary judgment and dismissed their claims against WVUH with prejudice. It is from this order that petitioners now appeal.

Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York,* 148 W. Va. 160, 133 S.E.2d 770 (1963). On appeal, this Court accords a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

On appeal, petitioners argue that the agreement created a joint venture between Respondent WVUH and UHA such that WVUH was vicariously liable for the alleged negligent treatment of Mrs. Wiles by Dr. France, a UHA physician.

The parties to the agreement included WVUBOG, UHA, and Respondent WVUH.[7] WVUBOG is the governing board of WVU, *see* W. Va. Code § 18B-2A-1(b), and, as such, has the power and duty to "[d]etermine, control, supervise and manage the financial, business and education policies and affairs of [WVU,]" W. Va. Code § 18B-2A-4(a), employ faculty members of the School of Medicine, including Dr. France, *see* W. Va. Code § 18B-2A-4(p), and "acquire legal services . . ., including representation of the governing board, its institution, employees and officers before any court or administrative body." W.Va. Code § 18B-2A-4(z), in part.

Prior to 1984, the State of West Virginia owned, and WVUBOG operated, the then-existing WVU hospital. *See generally* W. Va. Code §§ 18-11C-1 and -2. However, in 1984, the Legislature created Respondent WVUH, a nonstock, not-for-profit corporation to which the operations of the then-existing hospital would be transferred, having determined that

---

[6] Petitioners filed a motion for partial summary judgment against WVUH and, even though Dr. France is no longer a party to the action, they also filed a motion for partial summary judgment regarding Dr. France's status as a "member of [UHA]." Petitioners' motions sought "partial" summary judgment because, if granted, the underlying medical negligence issues would still need to be resolved.

[7] As previously noted, West Virginia United Health System, Inc., was also a signatory to the agreement but was not a named defendant in this civil action.

3

[i]t is unnecessarily costly and administratively cumbersome for [WVUBOG] to finance, manage and carry out the patient care activities of an academic institution within the existing framework of a state agency. The patient care operations are more efficiently served by contemporary legal, management and procedural structures utilized by similarly situated private entities throughout the nation; [and]

It is fiscally desirable that the state separate the business and service functions of the hospital from the educational functions of the health science schools, that [WVUBOG] cease operation of the existing facilities, that [WVUBOG] transfer the operations to [WVUH], that [WVUBOG] pay certain existing sums and assign the assets and certain leasehold interests to [WVUH] in order to acquire [WVUH's] agreement to provide certain space and services and to assume the liabilities, that the agreement and certain other contractual relationships between [WVUBOG] and [WVUH] be authorized, and that the existing facilities operated by [WVUH], and subsequently the new facilities owned and operated by [WVUH], be self-sufficient and serve to remove the tax burden of operating the existing facilities from the state[.]

W. Va. Code §§ 18-11C-2(a)(3) and (4).[8] *See Queen v. West Virginia Univ. Hosp., Inc.*, 179 W. Va. 95, 100, 365 S.E.2d 375, 380 (1987) ("Drawing on its substantial experience with statutory

---

[8] Additional legislative findings with regard to the creation of WVUH include:

(1) The purposes of the existing facilities are to facilitate the clinical education and research of the health science schools and to provide patient care, including specialized services not widely available elsewhere in West Virginia. The eventual termination of the services in lieu of replacement or modernization would create an unreasonable hardship on patients in the area and throughout the state;

(2) These purposes separately and collectively serve the highest public interest and are essential to the public health and welfare, but must be realized in the most efficient manner and at the lowest cost practicable and consistent with these purposes;

. . . .

(5) A not-for-profit corporate structure with appropriate governance consistent with the delivery of health care to the patient and academic need of the university is the best means of assuring prudent financial management and the future economy of operation under rapidly changing market conditions, regulation and reimbursement; and

4

corporations, the Legislature has provided that WVUH will discharge an important educational support function.") Thus, Respondent WVUH was organized

> for the stated purposes of (1) facilitating health sciences education and research, (2) providing patient care, including specialized services not widely available elsewhere in West Virginia, in the most efficient manner and at the lowest practicable cost, and (3) providing independence and flexibility of management and funding and assuring future economy of operation under changing conditions by separating the business and service functions of the corporation's facilities from the educational functions, and by providing that such facilities will be self-sufficient, removing the tax burden from the state.

*Queen*, 179 W. Va. at 96-97, 365 S.E.2d at 376, syl. pt.1, in part. *See also* W.Va. Code §§ 18-11C-2(b)(1) and (4) (noting in additional legislative findings that the best interests of the citizens of this State "will be best served by ensuring the continued vitality and viability of the West Virginia based health care institutions which are devoted to addressing the state's tertiary health care and health science education needs[,]" and creating "a coordinated, integrated, efficient and effective health science and health care delivery system which is . . . responsive to the health care and health science education needs of the citizens . . . and responsive to the financial pressures of a dynamic health care environment").

According to its Amended and Restated Articles of Incorporation that were adopted in 2004, UHA[9] was

> organized exclusively for charitable, scientific, and educational purposes. More specifically the following:

>> To enable [UHA], through its physician members, to make available medical services to patients referred to the West Virginia University Medical Center and its satellite facilities for care; to collect fees for such medical services through a professional fees office established by [UHA] to provide appropriate financial and administrative support for the clinical practice of the faculty physicians of the West Virginia University School of Medicine; to be responsible for the financial management of those support activities including holding and maintaining real and personal property,

---

(6) The interests of the citizens of the state will be best met by [WVUBOG's] entering into and carrying out the provisions of the agreement as soon as possible, to provide independence and flexibility of management and funding while enabling the state's tertiary health care and health science education needs to be better served.

W. Va. Code §§ 18-11C-2(a)(1), (2), (5), and (6).

[9] According to Respondent WVUH, UHA was formed in 1971.

bank accounts, investments, and such other assets as necessary to provide for such support and reasonably foreseeable contingencies; and to disburse revenues in excess of what is determined by its Board of Directors to be required for the proper functioning of [UHA] to the West Virginia University School of Medicine or its subdivisions.[10]

(Footnote added).

West Virginia Code § 18-11C-4 authorized the WVUBOG to enter into the agreement with Respondent WVUH, "which agreement *shall contain the following provisions*, subject to further specification as shall be mutually agreed upon by [WVUBOG] and [WVUH][,]"[11] including that WVUH shall have

(a) [A] leasehold interest in the proposed site for the new facilities . . . .

(b) [WVUH] shall lease, manage and operate the existing facilities, subject to the provisions of this article, and shall construct, own and operate the new facilities, and shall have the power to encumber and otherwise deal with the assets, without limitation or regard to their sources: Provided, that [WVUH] shall have no power to mortgage or otherwise encumber the real property constituting a part of the existing facilities.

(c) [T]he new facilities will serve as the primary clinical setting for health science school students to receive educational and research experiences. The university faculty shall have exclusive medical and dental staff privileges . . . at the new facilities.

(d) [WVUH] may utilize both corporation employees and university personnel. . . . each university employee working in the hospital shall elect to be either a corporation employee or a part of university personnel. . . . All university personnel are university employees in all respects.

(Emphasis and footnote added).

---

[10] We note that, although not applicable to the present matter, in 2015, after the events herein transpired, legislation was enacted to give immunity from civil liability to clinical practice plans and personnel associated with medical and dental schools. *See* W. Va. Code §§ 55-7H-1 through -6. Specifically, pursuant to West Virginia Code § 55-7H-3, "all clinical practice plans . . . are only liable up to the limits of insurance coverage procured through the State Board of Risk and Insurance Management" for claims of medical negligence of employees.

[11] *See* W. Va. Code § 18-11C-1(a) (defining "the agreement" as used in article 11C as "the long-term lease and agreement to be entered into between [WVUBOG] and [WVUH] pursuant to [West Virginia Code § 18-11C-4]")

At issue in this appeal is whether the agreement created a joint venture between Respondent WVUH and UHA such that WVUH was vicariously liable for the alleged negligent treatment of Mrs. Wiles by Dr. France, a UHA physician.

> "A joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." Syl. pt. 2, *Price v. Halstead*, 177 W. Va. 592, 355 S.E.2d 380 (1987).

Syl. Pt. 5, *Armor v. Lantz*, 207 W. Va. 672, 535 S.E.2d 737 (2000). This Court has emphasized that a distinguishing feature of a joint venture is an agreement to share in the profits and losses of the enterprise. *See id.* at 743, 535 S.E.2d at 678 (citing *Pownall v. Cearfoss*, 129 W. Va. 487, 497-98, 40 S.E.2d 886, 893-94 (1946). *See also Pyles v. Mason County Fair, Inc.*, 239 W. Va. 882, 888, 806 S.E.2d 806, 812 (2017) (declaring that "the focus on the 'presence or absence of an agreement to share in the profits and losses of an enterprise' remains a critical component of the joint venture analysis today").

To establish a joint venture, we have also observed the necessity that "joint venturers hav[e] equal control over the common commercial pursuit." *Armor*, 207 W. Va. at 745, 535 S.E.2d at 680. "'Possibly the most important criterion of a joint venture is joint control and management of the property used in accomplishing its aims.'" *Id.* (quoting *Barton v. Evanston Hosp.*, 513 N.E.2d 65, 67 (Ill. 1987). This Court has recognized that "'[t]he control required for imputing negligence under a joint enterprise theory is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose.'" *Id.* (quoting *Slaughter v. Slaughter*, 379 S.E.2d 98, 101 (1989)).

Finally, this Court has likened a joint venture to a partnership, explaining that they "'are governed generally by the same basic legal principles.'" *Pyles*, 239 W. Va. at 887, 806 S.E.2d at 811 (quoting *Armor*, 207 W. Va. at 678, 535 S.E.2d at 743). "'Thus, since all partners are jointly liable for all debts and obligations of a partnership, *see* W. Va. Code 47B-3-6(a) (1996), members of a joint venture are likewise jointly and severally liable for all obligations pertaining to the venture.'" *Id.*[12]

In its order granting summary judgment in favor of WVUH, the circuit court found that "[t]he agreement, by its own terms, is 'designed to improve the health of the residents of West Virginia through the accomplishments of the integrated missions of teaching, research, care, and service'"[;] that, pursuant to the agreement, Respondent WVUH and UHA "cooperate on a daily

---

[12] WVUBOG, though not a party to this appeal, is a signatory to the agreement. Pursuant to West Virginia Code § 18-11C-8, "[o]bligations of [WVUH] . . . shall not constitute debts or obligations of the University, [WVUBOG] or the state." In its amicus curiae brief, WVUBOG argues that, pursuant to this statute, it "can never be held legally liable for WVUH's debts or liabilities, which would include liabilities for medical negligence claims. . . . [D]etermining that a joint venture exists would inevitably contravene the statutory prohibition of WVUBOG being obligated for the debts of WVUH."

basis to run a hospital and to provide medical services to patients"; and that WVUH and UHA "are separate legal entities." The court concluded that petitioners failed to prove that Respondent WVUH "had the right to control Dr. France's practice of medicine with respect to his care and treatment of M[r]s. Wiles[,]" and, likewise,

> there is no evidence that UHA, WVUBOG, or Dr. France had the right to control WVUH's practices with respect to the day-to-day operation of the hospital. . . . [B]ecause each entity has retained its separate identity and separate responsibilities with respect to its role, [Petitioners] cannot establish the essential elements of a joint venture so as to make WVUH liable for the alleged negligence of Dr. France.

On appeal, petitioners contend that the circuit court's order failed to address whether WVUH and UHA "combine[d] their property, money, effects, skill and knowledge" and that, in fact, they have done so pursuant to the agreement "so as to carry out a single business enterprise known as WVU Healthcare." Petitioners argue that WVUH provides "a hospital and nursing staff" while "UHA, through its members, provide[s] the physicians to treat patients at WVUH's hospital[,]" and that each has contributed "something promotive of the enterprise." Further, petitioners argue, the circuit court's finding that "[t]here is no evidence that WVUH had the right to control Dr. France's practice of medicine with respect to his care and treatment of M[r]s. Wiles" is an analysis more appropriate as to whether Dr. France was an employee or independent contractor rather than if a joint venture existed between WVUH and UHA. According to petitioners, to the extent "control" is important to establishing the existence of a joint venture, "what matters is the shared right to control the venture, not individual members of each venture, such as Dr. France." We find no error.

As a threshold matter, we note that neither party contends that the agreement is ambiguous. "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpret[at]ion but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962). Thus,

> "'[i]n construing a . . . written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith.' Pt. 1, syllabus, *Maddy v. Maddy*, 87 W. Va. 581[, 105 S.E. 803 (1921)]." Syllabus point 5, *Hall v. Hartley,* 146 W.Va. 328, 119 S.E.2d 759 (1961).

Syl. Pt. 5, *Zimmerer v. Romano*, 223 W. Va. 769, 679 S.E.2d 601 (2009).

In support of their argument on appeal, petitioners reference numerous carefully selected excerpts of the agreement that, they contend, establish the essential elements of a joint venture

8

between Respondent WVUH and UHA.[13] Suffice it to say, in relying on carefully chosen portions of the agreement that suit their purpose, petitioners necessarily omit relevant language that does not. Further, petitioners fail to acknowledge anywhere in their brief the statutory mandate and obligations of the parties that we have outlined above, such as the requirements that WVUH "shall own and operate the new facilities," W. Va. Code § 18-11C-4(b), in part, which "will serve as the primary clinical setting for health science school students to receive educational and research experiences. The university faculty [i.e., UHA physicians] shall have exclusive medical and dental staff privileges . . . at the new facilities." W. Va. Code § 18-11C-4(c), in part. Additionally, "[a]ll university personnel are university employees in all respects." W. Va. Code § 18-11C-4(d), in part.

Further, consistent with the legislative mandate, through the agreement,

> WVUH and UHA seek to integrate their mission and purpose, management, clinical activities, and economic and financial activities, while preserving the identity and values of WVUH and UHA, in order to better support the education, service and research missions of [the School of Medicine] and to more efficiently and effectively provide better care to patients.
>
> . . . .
>
> *[T]he parties declare their commitment to better support the missions of the [School of Medicine]. In particular, the parties intend to strengthen their support of the [School of Medicine] and its faculty in their pursuit of educating and training the next generation of physicians and of conducting research that advances the science of medicine and its benefit to patients, the State of West Virginia, and the nation. At its core, this agreement is designed to improve the health of the residents of West Virginia through the accomplishments of the integrated missions of teaching, research, care, and service.*
>
> UHA and WVUH therefore enter into this [a]greement in order to further integrate their mission and purpose, management, clinical activities, economic and financial activities, and identities, so as to function as a single strategic and economic unit, to be known as WVU Healthcare. *UHA and WVUH believe that greater integration will lead to a more complete and timely consideration of the best interests of the patients, students, and education programs in the decision-making process and provide a comprehensive understanding of the financial impact of decisions across all departments and activities* associated with WVU Healthcare.

(Emphasis added). Importantly,

---

[13] Petitioners also reference WVU Healthcare's Strategic Plan for 2012-2017; a published article entitled "Achieving Alignment in an Academic Health Science System: Creating WVU Healthcare; and the deposition testimony of Dr. Judie Charlton, the Chief Medical Officer for UHA, Respondent WVUH, and WVU Healthcare.

UHA and WVUH commit to function as a single clinical enterprise, *while retaining their separate corporate identities*. UHA and WVUH agree to establish and maintain a common mission, vision, and strategic plan. UHA and WVUH commit to develop integrated strategic, operating, and financial plans to better grow the clinical enterprise *in service to the missions of the [School of Medicine]*.

. . . .

*The respective Parties to this document will retain all existing authorities and responsibilities* and will seek to coordinate their efforts through greater transparency, including the sharing of agenda and Board minutes, and such other steps as may be recommended by senior leadership and approved by the Boards respectively. *Notwithstanding anything to the contrary contained herein, this [a]greement does not change the existing Bylaws or Articles of Incorporation of the parties.*

. . . .

The parties acknowledge and agree that *each party has certain obligations and responsibilities which pre-exist the execution of this [agreement]* . . . . These include, but are not limited to, the following:

. . . .

UHA. *The powers reserved to UHA as a medical corporation including the right to be free from influence regarding the exercise of the faculty physicians' judgment or discretion with respect to the activities which constitute the practice of medicine.* Nothing contained in this [a]greement is meant or intended in any way to alter the rights, duties privileges, responsibilities and liabilities incident to the physician-patient relationship nor is any provision hereof meant or intended to change in any way the personal character of the physician-patient relationship.

(Emphasis added).

When considered fully in context and in its entirety, and particularly in light of the statutory provisions previously addressed, the agreement reflects the signatories' execution of the legislative goal of removing the tax, administrative, and other burdens from the state with regard to operating medical facilities in support of the education, training, and research functions of the School of Medicine and better serving the health care needs of the citizens of this state. We thus conclude that the unique collaboration of the parties to the agreement, which expressly preserves the separate identities of Respondent WVUH and UHA, as well as their pre-existing obligations and responsibilities, does not amount to a combination of "property, money, effects, skill and knowledge" for the purpose of "carry[ing] out a single business enterprise for profit[,]" and, thus, does not satisfy the basic elements of a joint venture. *Armor*, 207 W. Va. at 674, 535 S.E.2d at 739, syl. pt. 5, in part (citation omitted). Therefore, the circuit court did not err in granting

Respondent WVUH's motion for summary judgment.[14]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 31, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Evan H. Jenkins

**DISSENTING AND WRITING SEPARATELY:**

Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

**DISQUALIFIED:**

Justice Elizabeth D. Walker

**Hutchison, J., dissenting:**

The question of whether WVU Hospitals, Inc. and University Health Associates are engaged in a joint venture for purposes of medical malpractice liability has implications beyond just the lawsuit filed by these particular plaintiffs. In my opinion, the issue warrants oral argument, consideration by a full panel of justices, and a formal opinion of this Court—not a memorandum decision. Moreover, because this appeal is decided on a vote of two to one, the memorandum decision lacks binding precedential value. The West Virginia Constitution dictates that "[n]o decision rendered by the court shall be considered as binding authority upon any court, except in the particular case decided, unless a majority of the justices of the court concur in such decision." W.Va. Const. art. VIII, § 4. *See e.g.*, Syl. Pt. 4, *Owens-Illinois Glass Co. v. Battle*, 151 W.Va. 655, 154 S.E.2d 854 (1967) (recognizing that under W.Va. Const. art. VIII, § 4, an opinion of this Court rendered by only two justices is not binding precedent). Accordingly, I respectfully dissent.

---

[14] Given our conclusion that the circuit court did not err in granting summary judgment in favor of Respondent WVUH, we need not address petitioners' remaining assignments of error that (1) the court erred in denying their partial motion for summary judgment regarding Dr. France's status as a member of UHA and (2) the court's order failed to include findings of fact sufficient for meaningful appellate review.